```
 1                UNITED STATES DISTRICT COURT
                    DISTRICT OF MINNESOTA
 2
     ---------------------------------------------------------
 3
     UNITED STATES OF AMERICA,      Case No.: 0:12-cr-295-PAM-AJB
 4
                  Plaintiff,              TRANSCRIPT
 5
             v.                              OF
 6
     ERIC WADE FORCIER,                  PROCEEDINGS
 7
                  Defendant.         (SENTENCING HEARING)
 8
     ---------------------------------------------------------
 9

10          The above-entitled matter came on for SENTENCING

11   HEARING before Senior Judge Paul A. Magnuson, on July 16th,

12   2013, at the United States District Courthouse, Courtroom 7D,

13   316 N. Robert Street, St. Paul, Minnesota 55101, commencing

14   at approximately 10:00 a.m.

15

16   REPORTED BY:   Ronald J. Moen, Official Court Reporter, CSR,
                    RMR.
17

18

19

20                                   CALIFORNIA CSR NO.:   8674

21                                   ILLINOIS CSR NO.:   084-004202

22                                      IOWA CSR NO.:   495

23                                       RMR NO.:   065111

24

25
```

```
 1                         APPEARANCES
 2                 OFFICE OF THE U.S. ATTORNEY, 300 South Fourth
 3     Street, Suite 600, Minneapolis, Minnesota 55415, by ALLEN A.
 4     SLAUGHTER, JR., Assistant United States Attorney, appeared
 5     as counsel on behalf of Plaintiff.
 6                 KYLE D. WHITE, Attorney at Law, 332 Minnesota
 7     Street, Suite W-1710, St. Paul, Minnesota 55101, appeared as
 8     counsel on behalf of Defendant.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    THE COURT:  Good morning, everyone.  We have the
2      matter of the United States versus Forcier.  If you'd come
3      forward, please.  And counsel, Mr. Forcier, you are in
4      receipt of the presentence report.  I don't believe there are
5      any objections to that report, and on that basis the Court
6      would find the total offense level is 28.  The criminal
7      history score is VI.  The imprisonment range is a hundred and
8      forty to a hundred and seventy-five months on Counts 1, 2 and
9      4, and seven years consecutive on Count 3.  Supervised
10     release is two to five years.  Fine range is $12,500 to
11     $125,000.  There is no eligibility for probation.  There's no
12     recommendation for a departure.  And there will be a special
13     assessment in the sum of $400; that's $100 per Count of
14     conviction.
15                    Essentially, this is a plea agreement in this
16     matter that has essentially tied the Court's hands.
17                    With that, are there any comments on behalf of the
18     defendant?
19                    MR. WHITE:  No, your Honor.
20                    THE COURT:  Mr. Forcier, do you have any comments
21     to make before penalty is imposed?
22                    THE DEFENDANT:  Is this where I get my chance to
23     talk?
24                    THE COURT:  This is where you get your chance,
25     that's right.

1              MR. WHITE:  Your Honor, I'm sorry, I thought you
2     were talking about the PSI.  I do have a couple of comments,
3     if I may.  I'll be very brief.
4              THE COURT:  I was a little bit shocked.  Go ahead.
5              MR. WHITE:  Your Honor, we are asking for the Court
6     to accept and adopt the plea agreement in this matter.  I
7     think there was a conscientious attempt on the part of the
8     Government and the defense to figure out for Mr. Forcier what
9     would be a fair resolution to this case.  And I would just
10    comment to your Honor, if I may, that we have seen many
11    individuals, and you've seen many more individuals, who are
12    here because of drugs and their addiction to drugs.
13    Mr. Forcier, from my own viewpoint, is really two people.
14    When he's been on drugs and he's been essentially in the
15    throes of an addiction, he's one person.  I think the support
16    that he has here today is a strong indication of the kind of
17    person that he can be, and really is.  I don't think I've
18    seen a more supportive group of family and friends in a case
19    in a long time.  And I'm very impressed with Mr. Forcier's
20    family and friends who have come here today, taking the time
21    out of their schedules to just tell him that they wish him
22    well and they want the best for him.  In many respects, I
23    think Mr. Forcier is dealing with this much better than those
24    family and friends that are here.  They're the ones that I
25    think really will have a difficult time seeing this sentence

1  imposed, and his absence.  Bottom line, again, we would ask
2  the Court to adopt and accept the plea agreement as
3  constructed under 11(c)(1)(C).
4           THE COURT:  Okay.  Thank you very much.
5           Mr. Forcier.
6           THE DEFENDANT:  I just want to thank everyone today
7  for coming here and supporting me.  As Kyle said, I'm two
8  different people.  I've struggled with drug addiction for a
9  long time.  I'm truly sorry for everything that I did, and
10 I'm ready to go do whatever I have to do to pay the
11 consequences.  I would ask that you keep me within the region
12 with your referral.  I'd prefer to go to Oxford, Wisconsin to
13 stay close to my family.  Like I said, I have a severe drug
14 addiction problem.  If I can get treatment while I'm down
15 there, I would really appreciate that also.  Obviously
16 "sorry" isn't enough for what I've done.  I've affected
17 people's lives in a great manner and if I could take that
18 back I would.  I just thank everybody for their time here
19 today.  That's all I've got to say.
20          THE COURT:  Okay.  Thank you very much.  Any
21 comments on behalf of the Government?
22          MR. SLAUGHTER:  Yes, your Honor.  Allen Slaughter
23 for the United States.  We would also ask the Court to accept
24 the terms of the plea agreement.  We worked with defense
25 counsel to try to at least assure ourselves in trying to

1   resolve this case that there would be some minimum amount of
2   sanction.  As the Court heard, there were five separate armed
3   robberies in which the defendant was the principal.  Many
4   victims, many different places, especially over the course of
5   October of last year.  That being said, we understand, just
6   as the defendant has spoken about, that this was a
7   drug-addled act.  But in giving up, essentially, what is
8   another 75 to a hundred years of potential sentencing, we
9   wanted to make sure that there was at least some minimum
10  amount of sanction for the purposes of just general
11  deterrence, specific deterrence, and some consequence for his
12  actions themselves.
13              And with that, your Honor, we'd ask that your Honor
14  accept, at least, the terms of the plea agreement.
15              THE COURT:  Okay.  Thank you, Mr. Slaughter.
16              Well, the Court does accept the plea agreement in
17  this matter, and I do so with the caveat that, generally
18  speaking, I'm very much against this kind of a plea agreement
19  and, generally speaking, I refuse to accept them.  But that's
20  a thing called an "independent judge."  But this happened to
21  be a unique situation.  First of all, you can take the
22  comments that Mr. Slaughter just made as appropriate.  And
23  the fact is, with great respect for Mr. White and lawyers
24  that have worked on this case, oftentimes you know a lot more
25  than those of us that are on this side of the bench know.

1        And when you see a situation where some kind of justice can
2        be established through this vehicle, it's appropriate.  It's
3        appropriate in this case.  Sentences are very long, and the
4        sentence that you're about to receive, Mr. Forcier, is very
5        long.  That is not really a question of anybody that's in
6        this courtroom.  That's a question of decisions that have
7        been made by the United States Congress, and it's the
8        decisions that have been made by virtue of a number of things
9        that have occurred over the years relating to drugs and drug
10       enhancement and related crimes, and so forth.  And that leads
11       to this.
12               Now, there is a second side to all of that,
13       Mr. Forcier.  And I have to tell you in some respects you're
14       fortunate because, you know, some bullet could have met its
15       mark or some event or something could have occurred in one of
16       these robberies and death could have resulted and you'd be
17       facing a very, very different situation.  Society can't
18       permit that to happen, drugs or no drugs.  You can't have an
19       excuse for that, it's just as simple as that.  You cannot
20       permit in an orderly society to have this kind of conduct
21       occur without due and just punishment.  You've got to tell
22       you not to do it anymore, and you've got tell everybody else
23       not to do it anymore.  That's part of what's going on here.
24               The final thing I want to comment on, to kind of
25       follow up with what you said to your family and friends that

1  are here, you know, you don't know the number of days that I
2  come in here with prosecutors, defense lawyers and a
3  defendant, and that defendant stands here all alone,
4  abandoned by everybody.  And it's a very special thing to see
5  that people -- even in difficult times that people will rally
6  to your benefit and to your side.  Hold that in your heart.
7  Keep that because it is important and it's very valuable.
8            Based upon these comments and pursuant to the
9  Sentencing Reform Act of 1984, it is the judgment of the
10 court that you are hereby committed to the custody of the
11 Bureau of Prisons for imprisonment for a term of 240 months.
12 This term consists of 156 months on each of Counts 1 and 2,
13 and 84 months on Count 3, 120 months on Count 4, with Counts
14 1, 2 and 4 to be served concurrent with one another, and
15 Count 3 to be served consecutive to Counts 1, 2 and 4.
16           In addition to this, mandatory restitution in the
17 sum of $4,288 is ordered, and that is with the victims of
18 Eddie's Bar and Grill of $3,420; Dominos Pizza, $160;
19 SuperAmerica, $154; Americas Best Value Inn, $354; and Jiffy
20 Lube, $200.  Payments of not less than $50 per month are to
21 made over a period of three years commencing 30 days after
22 release from confinement.  Payments are to be made payable to
23 the Clerk for the U.S. District Court for disbursement to the
24 victims.  Over the period of incarceration, you shall make
25 payments of either quarterly installments of a minimum of $25

1    if working non-UNICOR or a minimum of 50 percent of monthly
2    earnings if working UNICOR.  It is recommended that you
3    participate in the Inmate Financial Responsibility Program
4    while incarcerated.  And the interest requirement is waived
5    in accordance with 18 U.S.C. Section 3612(f)(3).
6            The Court does not order a fine.  However, the
7    Court does order a special assessment in the sum of $400.
8    That is $100 per count of conviction.
9            Upon release from confinement, you shall be placed
10   on supervised release for a term of five years.  During that
11   five-year period of supervised release, you shall comply with
12   the -- well, I guess I even have to get complicated on that
13   too.  You have five years of supervised release that consists
14   of three years on Counts 1, 2, 4, and five years on Count 3.
15   All of these terms are to be served concurrently.
16           Mandatory conditions that are applicable are you
17   must report to the U.S. Probation Office/Pretrial Service
18   Office in the district which you're released within 72 hours
19   of release from the custody of the Bureau of Prisons.
20           You shall not commit any crimes, federal, state or
21   local.
22           You shall not illegally possess a controlled
23   substance, and you shall refrain from any unlawful use of a
24   controlled substance.  You shall submit to one drug test
25   within 15 days of release from imprisonment, at least two

1     periodic drug tests thereafter as determined by the Probation
2     Office.
3              You shall not possess a firearm, ammunition,
4     destructive device or other dangerous weapon.
5              You shall cooperate in the collection of DNA as
6     directed by the probation officer.
7              Restitution is a condition of supervision, and you
8     shall pay in accordance with the schedule of payments
9     established by the Probation Office.
10             In addition to this, you shall abide by the
11    standard conditions of supervised release that have been
12    adopted by the Court, including the following special
13    conditions:
14             You shall abstain from the use of alcohol and other
15    intoxicants, and not frequent establishments whose primary
16    business is the sale of alcoholic beverages.
17             You shall participate in a program for substance
18    abuse as approved by the probation officer.  That program may
19    include testing, inpatient or outpatient treatment,
20    counseling or support group.  Further, you shall contribute
21    to the cost of such treatment as determined by the Probation
22    Office co-payment program not to exceed the total cost of
23    treatment.
24             If you're not employed at a regular, lawful
25    occupation as deemed appropriate by the probation officer,

1   you may be required to perform up to 20 hours of community
2   service per week until employed.  You may also participate in
3   training, counseling, daily job search or other employment-
4   related activities as directed by the probation officer.
5               You shall provide the Probation Office with access
6   to any requested financial information, including credit
7   reports, credit-card bills, bank statements, telephone bills.
8   You shall be prohibited from incurring new credit charges or
9   opening additional lines of credit without approval of the
10  Probation Officer.
11              In addition to this, the Court would give the
12  recommendation -- although I have to tell you that I do not
13  have any authority on this, I just can only make a
14  recommendation -- that your place of confinement be at the
15  Oxford facility or such other place as close as possible to
16  the District of Minnesota.  In addition to this, during the
17  term of your incarceration that you be permitted to avail
18  yourself of the so-called "500-hour chemical dependency
19  program."
20              Further, the Court has imposed this sentence at the
21  range applicable to this pursuant to the plea agreement in
22  this matter and the Court having adopted the plea agreement.
23  And I need to put the numbers in there, but I can't remember
24  what they are.
25              Because you're indigent, and because of your

1  inability to pay, the Court does not order you to pay a fine,
2  cost of imprisonment, cost of supervision.
3           And finally, the parties are placed on notice they
4  do have 14 days from this date to file a notice of appeal
5  for review of the sentence.  And during that 14-day period,
6  the Court will retain the presentence investigation in
7  chambers under seal.  And in the event of an appeal will
8  forward the same to the Eighth Circuit Court of Appeals.
9           Anything further to come to our attention?
10          MR. WHITE:  No, your Honor.
11          THE COURT:  The motion to dismiss the Indictment is
12  granted because this was a plea to an Information as opposed
13  to the original Indictment in the matter.
14          MR. SLAUGHTER:  And I should make sure, for
15  purposes of the record, as to this defendant.  I know we have
16  one defendant that's out there still, as well.
17              THE COURT:  Yes.  Okay.  Anything further?
18              MR. SLAUGHTER:  Nothing from the Government,
19  your Honor.
20              THE COURT:  Okay.  Very well.  Thank you very
21  much.  Wish you the very best.
22              (Court stood in recess at approximately 10:25
23  a.m., on July 16th, 2013).
24
25

1                          <u>CERTIFICATE PAGE</u>

2

3          I, Ronald J. Moen, an Official Court Reporter for the
   District of Minnesota, CSR, RMR, and a Notary Public in and
4  for the County of Hennepin, in the State of Minnesota, do
   hereby certify:

5          That the said SENTENCING HEARING was taken before me
   as an Official Court Reporter for the District of Minnesota,
6  CSR, RMR, and a Notary Public at the said time and place and
   was taken down in shorthand writing by me;

7

           That said SENTENCING HEARING was thereafter under my
8  direction transcribed into computer-assisted transcription,
   and that the foregoing transcript constitutes a full, true
9  and correct report of the transcript of the SENTENCING
   HEARING which then and there took place;

10         That I am a disinterested third person to the said

11 action;

12         That the cost of the original has been charged to the
   party that ordered the transcript, and that all parties who
13 ordered copies have been charged at the same rate for such
   copies.

14
           That I reported pages 1 through 13.
15
           IN WITNESS THEREOF, I have hereto subscribed my hand
16 this 29th day of December, 2014.

17

18                              <u>s/Ronald J. Moen</u>
                                Ronald J. Moen,
19                              Official Court Reporter,
                                CSR, RMR, NP
20

21

22

23

24

25